MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
JOSE CARCHI, MARCO VASQUEZ,
FLAVIO CAISAGUANO, JESUS
CASTILLO, LUIZ ROMERO DE JESUS,
MANUEL MANEIRO, WILIAN ARGUDO,
FREDDY VAZQUEZ, SERGIO LLANOS,
and CHARLES ALIAGA *individually and on*
*behalf of others similarly situated,*

                    *Plaintiffs*,

        -against-

SAN PIETRO RESTAURANT INC. (d/b/a
SAN PIETRO RESTAURANT), SISTINA
RESTAURANT INC. (D/B/A SISTINA),
GERARDO BRUNO, GIUSEPPE BRUNO
AND COSIMO BRUNO,

                    *Defendants.*
-----------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b) AND RULE 23**
**CLASS ACTION**

**ECF Case**

       Plaintiffs Jose Carchi, Marco Vasquez, Flavio Caisaguano, Jesus Castillo, Luiz Romero

de Jesus, Manuel Maneiro, Wilian Argudo, Freddy Vazquez, Sergio Llanos, and Charles Aliaga

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against San Pietro Restaurant Inc. (d/b/a San Pietro Restaurant ), Sistina Restaurant Inc. (d/b/a

Sistina) ("Defendant Corporations"), Gerardo Bruno, Giuseppe Bruno, and Cosimo Bruno allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of defendants San Pietro Restaurant Inc. (d/b/a San Pietro Restaurant), Sistina Restaurant Inc. (d/b/a Sistina), Gerardo Bruno, Giuseppe Bruno and Cosimo Bruno (collectively "Defendants").

2.       Defendants own, operate, or control two Italian restaurants located at 18 E. 54th St, New York, New York 10019 under the name San Pietro Restaurant and at 24 E. 81st Street, New York, NY 10028 under the name Sistina.

3.      Upon information and belief, individual defendants Gerardo Bruno, Giuseppe Bruno and Cosimo Bruno serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the Italian restaurants as joint or unified enterprises.

4.      Plaintiffs were ostensibly employed as busboys, food runners, expediter, dispatcher, bartender, and waiters, but they were required  to spend a considerable part of their work day performing non-tipped duties, including but not limited to, various Italian restaurant duties such as dishwashing, carrying dirty dishes and garbage down to the basement, bringing plates of food up from the basement to the first floor, making desserts and salads, carrying down food and wine bottles from inventory delivery to the basement, setting up and cleaning tables, cleaning the floor, the basement, the crystals on the ceiling and the counter, vacuuming the carpet, defrosting the cooler, cutting bread, cleaning the bar on Fridays and Saturdays, carrying 15 tables and 60 chairs outside and then at the end of the night carrying the tables and chairs

back inside during the summer, carrying out and bringing back in 200 pound umbrellas, sweeping and mopping the entire restaurant, carrying down tables and chairs  to the basement at the end of the summer, carrying up ice from the basement, stocking  deliveries brought to the restaurant, cleaning windows, the walls, the dessert station  and the customer bathroom, changing lights, taking out the garbage, bringing up liquor from the basement and stocking the bar, twisting and tying up cardboard boxes, handwashing silverware, performing the duties of the porter and purchasing supplies for the restaurant (hereafter the "non-tipped duties").

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours per week that they worked. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of pay or for any additional overtime premium. Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

6.      Defendants employed and accounted for Plaintiffs as tipped employees in their payroll, but in actuality Plaintiffs' duties required a considerable amount of time spent in non-tipped, duties.

7.      Regardless, at all times Defendants paid Plaintiffs at the tip-credit rate.

8.      Under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y.C.R.R. §146.

9.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as tipped employees

instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay Plaintiffs the lower tip-credited rate.

10.     In addition, defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

11.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

12.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

13.      Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

14.     Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate Italian restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

17.     Plaintiff Jose Carchi ("Plaintiff Carchi " or "Mr. Carchi ") is an adult individual residing in Nassau County, New York.  Plaintiff Carchi was employed by Defendants from approximately June 2011 until on or about February 2017.

18.     Plaintiff Marco Vasquez ("Plaintiff Vasquez" or "Mr. Vasquez") is an adult individual residing in Queens County, New York. Plaintiff Vasquez was employed by Defendants from approximately 2009 until on or about February 2017.

19.     Plaintiff Flavio Caisaguano ("Plaintiff Caisaguano" or "Mr. Caisaguano") is an adult individual residing in Waterbury, Connecticut.  Plaintiff Caisaguano was employed by Defendants from approximately August 2009 until on or about August 2014.

20.     Plaintiff Jesus Castillo ("Plaintiff Castillo" or "Mr. Castillo") is an adult individual residing in Queens County, New York. Plaintiff Castillo was employed by Defendants

from approximately September 2015 until on or about February 2016 and from approximately March 2016 until on or about December 23, 2016.

21.    Plaintiff Luiz Romero de Jesus ("Plaintiff Romero" or "Mr. Romero") is an adult individual residing in Queens County, New York. Plaintiff Romero was employed by Defendants at the San Pietro location from approximately August 2013 until on or about June 2, 2016 and at the Sistina location during the month of November 2016.

22.    Plaintiff Manuel Maneiro ("Plaintiff Maneiro" or "Mr. Maneiro") is an adult individual residing in New York County, New York. Plaintiff Maneiro was employed by Defendants from approximately June 2016 until on or about March 21, 2017.

23.    Plaintiff Wilian Argudo ("Plaintiff Argudo " or "Mr. Argudo ") is an adult individual residing in Queens County, New York. Plaintiff Argudo was employed by Defendants from approximately 2007 until on or about July 2016.

24.    Plaintiff Freddy Vazquez ("Plaintiff Freddy" or "Mr. Freddy") is an adult individual residing in Queens County, New York.  Plaintiff Freddy was employed by Defendants from approximately September 2015 until on or about November 2016.

25.    Plaintiff Sergio Llanos ("Plaintiff Llanos" or "Mr. Llanos") is an adult individual residing in Queens County, New York.  Plaintiff Llanos was employed by Defendants from approximately 2007 until on or about October 2015.

26.    Plaintiff Charles Aliaga ("Plaintiff Aliaga" or "Mr. Aliaga") is an adult individual residing in Queens County, New York.  Plaintiff Aliaga was employed by Defendants from approximately 2009 until on or about September 2012.

*Defendants*

27.    At all relevant times, Defendants own, operate, or control two Italian restaurants located at 18 E. 54th St, New York, NY 10019 under the name "San Pietro Restaurant" and at 24 E. 81st Street, New York, NY 10028 under the name "Sistina."

28.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

29.    Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r-s).

30.    Upon information and belief, San Pietro Restaurant Inc. (d/b/a San Pietro Restaurant) is a Corporation organized and existing under the laws of the state of New York, and maintains its principal place of business at 18 E. 54th Street, New York, New York 10019.

31.    Upon information and belief, Sistina Restaurant Inc. (d/b/a Sistina) is a Corporation organized and existing under the laws of the state of New York, and maintains its principal place of business at 24 E. 81st Street, New York, New York 10028.

32.    Defendant Gerardo Bruno is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Gerardo Bruno is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Gerardo Bruno possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

33.    Defendant Giuseppe Bruno is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Giuseppe Bruno is

- 7 -

sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Giuseppe Bruno possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

34.     Defendant Cosimo Bruno is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Cosimo Bruno is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Cosimo Bruno possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

35.     Defendants operate two Italian restaurants one of which is located in the Midtown section of Manhattan and the other one is located in the Upper East Side section of Manhattan.

36.     The individual defendants, Gerardo Bruno, Giuseppe Bruno and Cosimo Bruno possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

37.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

38.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

39.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and were Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

40.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

41.     Upon information and belief, individual defendants Gerardo Bruno, Giuseppe Bruno, and Cosimo Bruno operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a.   failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b.   defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c.   transferring assets and debts freely as between all Defendants,

  d. operating Defendant Corporations for their own benefit as the sole or majority shareholders,

  e. operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

  f. intermingling assets and debts of their own with Defendant Corporations,

  g. diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

  h. other actions evincing a failure to adhere to the corporate form.

42. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

43. In each year from 2011 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

44. In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. As an example, numerous items that were used in the Italian restaurants on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

45. Plaintiffs are former employees of Defendants who primarily were employed as busboys, food runners, expediter, dispatcher, bartender, and waiters. However, they spent a considerable amount of time performing the non-tipped duties described above.

46. Plaintiffs seek to represent a class of similarly situated individuals under 29

U.S.C. 216(b).

*Plaintiff Jose Carchi*

47.     Plaintiff Carchi was employed by Defendants from approximately June 2011 until on or about February 2017.

48.     Defendants ostensibly employed Plaintiff Carchi as a busboy from approximately June 2011 until on or about May 2014 and as a food runner, expediter, and dispatcher from approximately May 2014 until on or about February 2017.

49.     However, Plaintiff Carchi was also required to spend a significant portion of his work day performing the non-tipped duties described above.

50.     Although Plaintiff Carchi was ostensibly employed as a tipped employee, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

51.     Plaintiff Carchi regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

52.     Plaintiff Carchi's work duties required neither discretion nor independent judgment.

53.     Plaintiff Carchi regularly worked in excess of 40 hours per week.

54.     From approximately June 2011 until on or about May 2014, Plaintiff Carchi worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 12:00 a.m. or 12:30 a.m. five days a week and from approximately 5:00 p.m. until on or about 12:00 a.m. one day a week (typically 68.25 hours per week).

55.     From approximately May 2014 until on or about January 2016, Plaintiff Carchi worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 12:00 a.m. or 12:30 a.m. six days a week (typically 73.5 hours per week).

56.     From approximately January 2016 until on or about February 2017, Plaintiff Carchi worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 12:00 a.m. or 12:30 a.m. five days a week and from approximately 5:00 p.m. until on or about 12:00 a.m. one day a week (typically 68.25 hours per week).

57.     Throughout his employment with defendants, Plaintiff Carchi was paid his wages by check.

58.     From approximately June 2011 until on or about December 2015, Defendants paid Plaintiff Carchi $5.00 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours.  For example, during the week of July 12, 2015, defendants paid Plaintiff Carchi $9.40 per hour for some of his overtime hours.

59.     From approximately January 2016 until on or about February 2017, Defendants paid Plaintiff Carchi $7.50 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours.  For example, during the week of January 10, 2016, defendants paid Plaintiff Carchi $11.25 per hour for some of his overtime hours.

60.     Even though Plaintiff Carchi was unable to eat the pasta with tomato sauce that defendants gave him and his fellow workers for lunch (because it caused him serious acid reflux), defendants still deducted the meal allowance from his paychecks in 2016.

61.     Furthermore, Defendants did not provide Plaintiff Carchi with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

62.     In addition, Plaintiff Carchi's wage statements did not indicate the correct amount of hours that he worked.

- 12 -

63.     Plaintiff Carchi was never notified by Defendants that his tips were being included as an offset for wages.

64.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Carchi's wages.

65.     In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Carchi(and his fellow tipped employees),  and used these tips to pay the porter's weekly salary; similarly, defendants withheld a portion of  the credit card tips customers wrote in for Plaintiff Carchi to pay the coat room attendant's weekly salary.

66.     Although Plaintiff Carchi was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Carchi was not compensated for all of the hours that he worked.

67.     Defendants did not give any notice to Plaintiff Carchi, in English and in Spanish (Plaintiff Carchi's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

68.     Defendants required Plaintiff Carchi to purchase "tools of the trade" with his own funds—including ten pairs of shoes per year and ten pairs of black dress pants per year.

*Plaintiff Marco Vasquez*

69.      Plaintiff Vasquez was employed by Defendants from approximately 2009 until on or about February 2017.

70.     Defendants ostensibly employed Plaintiff Vasquez as a busboy and food runner.

71.     However, Plaintiff Vasquez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

72.     Although Plaintiff Vasquez was ostensibly employed as a busboy and food runner, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

73.     Plaintiff Vasquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

74.     Plaintiff Vasquez's work duties required neither discretion nor independent judgment.

75.     Plaintiff Vasquez regularly worked in excess of 40 hours per week.

76.     From approximately April 2011 until on or about February 2017, Plaintiff Vasquez worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 12:00 a.m. four days a week and from approximately 10:00 a.m. until on or about 4:00 p.m. and from approximately 5:00 p.m. until on or about 12:00 a.m. two days a week (typically 74 hours per week).

77.     Throughout his employment with Defendants, Plaintiff Vasquez was paid his wages by check.

78.     From approximately April 2011 until on or about December 2015, Defendants paid Plaintiff Vasquez $5.00 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours.  For example, during the week of January 25, 2015, defendants paid Plaintiff Vasquez $9.40 per hour for some of his overtime hours.

79.     From approximately January 2016 until on or about February 2017, Defendants paid Plaintiff Vasquez $7.50 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours.  For example, during the week of

March 13, 2016, defendants paid Plaintiff Vasquez $11.25 per hour for some of his overtime hours.

80.    Although Plaintiff Vasquez only ate the pasta with tomato sauce that defendants gave him and his fellow workers every day for lunch twice a week, defendants still deducted the meal allowance from his paychecks in 2016.

81.    Plaintiff Vasquez was never notified by Defendants that his tips were being included as an offset for wages.

82.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vasquez's wages.

83.    In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Vasquez (and his fellow tipped employees),  and used these tips to pay the porter's weekly salary;  similarly, defendants withheld a portion of  the credit card tips customers wrote in for Plaintiff Vasquez to pay the coat room attendant's weekly salary.

84.    Although Plaintiff Vasquez was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Vasquez was not compensated for all of the hours that he worked.

85.    Furthermore, Defendants did not provide Plaintiff Vasquez with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

86.    In addition, Plaintiff Vasquez's wage statements did not indicate the correct amount of hours that he worked.

87.    Defendants did not give any notice to Plaintiff Vasquez, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88.    Defendants required Plaintiff Vasquez to purchase "tools of the trade" with his own funds—including ten black dress pants per year, twenty white dress shirts per year and 4 pairs of black dress shoes per year.

*Plaintiff Flavio Caisaguano*

89.    Plaintiff Caisaguano was employed by Defendants from approximately August 2009 until on or about August 2014.

90.    Defendants ostensibly employed Plaintiff Caisaguano as a busboy.

91.    However, Plaintiff Caisaguano was also required to spend a significant portion of his work day performing the non-tipped duties described above.

92.    Although Plaintiff Caisaguano was ostensibly employed as a busboy, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

93.    Plaintiff Caisaguano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

94.    Plaintiff Caisaguano's work duties required neither discretion nor independent judgment.

95.    Plaintiff Caisaguano regularly worked in excess of 40 hours per week.

96.    From approximately April 2011 until on or about August 2014, Plaintiff Caisaguano worked from approximately 10:00 a.m. until on or about 4:00 p.m. and from approximately 5:00 p.m. until on or about 12:30 a.m. Mondays through Wednesdays and from approximately 10:00 a.m. until on or about 4:00 p.m. and from approximately 5:00 p.m. until on or about 1:00 a.m. Thursdays through Saturdays (typically 82.5 hours per week).

97.    Throughout his employment with Defendants, Plaintiff Caisaguano was paid his wages by check.

- 16 -

98.    From approximately April 2011 until on or about August 2014, Defendants paid Plaintiff Caisiguano $5.00 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours.  For example, during the week of January 5, 2014, defendants paid Plaintiff Caisiguano $8.65 per hour for some of his overtime hours.

99.    Plaintiff Caisaguano was never notified by Defendants that his tips were being included as an offset for wages.

100.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Caisaguano's wages.

101.    In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Caisaguano (and his fellow tipped employees),  and used these tips to pay the porter's weekly salary;  similarly, defendants withheld a portion of  the credit card tips customers wrote in for Plaintiff Caisaguano to pay the coat room attendant's weekly  salary.

102.    Although Plaintiff Caisaguano was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Caisaguano was not compensated for all of the hours that he worked.

103.    Furthermore, Defendants did not provide Plaintiff Caisaguano with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

104.    In addition, Plaintiff Caisaguano's wage statements did not indicate the correct amount of hours that he worked.

105.    Defendants did not give any notice to Plaintiff Caisaguano, in English and in Spanish (Plaintiff Caisaguano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

106.    Defendants required Plaintiff Caisaguano to purchase "tools of the trade" with his own funds—including five black dress pants per year and seven pairs of black dress shoes per year.

*Plaintiff Jesus Castillo*

107.    Plaintiff Castillo was employed by Defendants from approximately September 2015 until on or about February 2016 and from about March 2016 until on or about December 23, 2016.

108.    Defendants ostensibly employed Plaintiff Castillo as a busboy.

109.    However, Plaintiff Castillo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

110.    Although Plaintiff Castillo was ostensibly employed as a busboy, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

111.    Plaintiff Castillo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

112.    Plaintiff Castillo's work duties required neither discretion nor independent judgment.

113.    Plaintiff Castillo regularly worked in excess of 40 hours per week.

114.    From approximately September 2015 until on or about February 2016 and from approximately March 2016 until on or about December 23, 2016, Plaintiff Castillo worked from approximately 10:00 a.m. until on or about 4:00 p.m. and from approximately 5:00 p.m. until on or about 12:00 a.m. four days a week and from approximately 10:00 a.m. until on or about 4:00 p.m. and from approximately 5:00 p.m. until on or about 1:00 a.m. two days a week (typically 80 hours per week).

115.    Throughout his employment with Defendants, Plaintiff Castillo was paid his wages by check.

116.    From approximately September 2015 until on or about December 2015, Defendants paid Plaintiff Castillo $5.00 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours. For example, during the week of September 13, 2015, defendants paid Plaintiff Castillo $9.40 per hour for some of his overtime hours.

117.    From approximately January 2016 until on or about December 23, 2016, Defendants paid Plaintiff Castillo $7.50 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours. For example, during the week of January 10, 2016, defendants paid Plaintiff Castillo $11.25 per hour for some of his overtime hours.

118.    Although Plaintiff Castillo rarely ate the pasta with tomato sauce that defendants gave him and his fellow workers every day for lunch, defendants still deducted the meal allowance from his paycheck in 2016.

119.    Plaintiff Castillo was never notified by Defendants that his tips were being included as an offset for wages.

120.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Castillo's wages.

121.    In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Castillo (and his fellow tipped employees),  and used these tips to pay the porter's weekly salary;  similarly, defendants withheld a portion of  the credit card tips customers wrote in for Plaintiff Castillo to pay the coat room attendant's weekly  salary.

122.    Although Plaintiff Castillo was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Castillo was not compensated for all of the hours that he worked.

123.    Furthermore, Defendants did not provide Plaintiff Castillo with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

124.    In addition, Plaintiff Castillo's wage statements did not indicate the correct amount of hours that he worked.

125.    Defendants did not give any notice to Plaintiff Castillo, in English and in Spanish (Plaintiff Castillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

126.    Defendants required Plaintiff Castillo to purchase "tools of the trade" with his own funds—including six black dress pants per year and five pairs of black dress shoes per year.

*Plaintiff Luiz Romero de Jesus*

127.    Plaintiff Romero was employed by Defendants from approximately August 2013 until on or about June 2, 2016 at the San Pietro location and during the month of November 2016 at the Sistina location.

128.    Defendants ostensibly employed Plaintiff Romero as a waiter.

129.    However, Plaintiff Romero was also required to spend a significant portion of his work day performing the non-tipped duties described above.

130.    Although Plaintiff Romero was ostensibly employed as a waiter, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

131.    Plaintiff Romero regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

132.    Plaintiff Romero's work duties required neither discretion nor independent judgment.

133.    Plaintiff Romero regularly worked in excess of 40 hours per week.

134.    From approximately August 2013 until on or about June 2, 2016, Plaintiff Romero worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 1:00 a.m. five days a week and from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 11:00 p.m. one day a week at the San Pietro location (typically 76 hours per week).

135.    During the month of November 2016, Plaintiff Romero worked from approximately 10:30 a.m. until on or about 3:00 p.m. and from approximately 6:00 p.m. until on or about 10:00 p.m. five days per week at the Sistina location (typically 42.5 hours per week).

136.    Throughout his employment with Defendants, Plaintiff Romero was paid his wages by check.

137.    From approximately August 2013 until on or about December 2015, Defendants paid Plaintiff Romero $5.00 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours.  For example, during the week of October 5, 2014, defendants paid Plaintiff Romero $9.00 per hour for some of his overtime hours.

138.    From approximately January 2016 until on or about June 2016 and during November 2016, Defendants paid Plaintiff Romero $7.50 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours.

139.    Although Plaintiff Romero rarely ate the pasta with tomato sauce that defendants gave him and his fellow workers every day for lunch, defendants still deducted the meal allowance from his paycheck in 2016.

140.    Plaintiff Romero was never notified by Defendants that his tips were being included as an offset for wages.

141.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Romero's wages.

142.    In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Romero (and his fellow waiters),  and used these tips to pay the porter's weekly salary; similarly, defendants withheld a portion of  the credit card tips customers wrote in for Plaintiff Romero to pay the coat room attendant's weekly salary.

143.    Although Plaintiff Romero was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Romero was not compensated for all of the hours that he worked.

144.    Furthermore, Defendants did not provide Plaintiff Romero with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

145.    In addition, Plaintiff Romero's wage statements did not indicate the correct amount of hours that he worked.

146.    Defendants did not give any notice to Plaintiff Romero, in English and in Spanish (Plaintiff Romero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

147.    Defendants required Plaintiff Romero to purchase "tools of the trade" with his own funds—including two jackets, five black dress pants per year and five black dress shoes per

year .

*Plaintiff Manuel Maneiro*

148.    Plaintiff Maneiro was employed by Defendants from approximately June 2016 until on or about March 21, 2017.

149.    Defendants ostensibly employed Plaintiff Maneiro as a waiter.

150.    However, Plaintiff Maneiro was also required to spend a significant portion of his work day performing the non-tipped duties described above.

151.    Although Plaintiff Maneiro was ostensibly employed as a waiter, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

152.    Plaintiff Maneiro regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

153.    Plaintiff Maneiro's work duties required neither discretion nor independent judgment.

154.    Plaintiff Maneiro regularly worked in excess of 40 hours per week.

155.    From approximately June 2016 until on or about March 21, 2017, Plaintiff Maneiro worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 12:00 a.m. four days a week and from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 11:00 p.m. two days a week (typically 70 hours per week).

156.    Throughout his employment with Defendants, Plaintiff Maneiro was paid his wages by check.

157.    From approximately June 2016 until on or about March 21, 2017, Defendants paid Plaintiff Maneiro $7.50 for his regular hours and varying rates (that were rarely at the

lawful overtime rate) for some of his overtime hours. For example, during the week of July 31, 2016, defendants paid Plaintiff Maneiro $12.00 per hour for some of his overtime hours.

158.    Although Plaintiff Maneiro rarely ate the pasta with tomato sauce that defendants gave him and his fellow workers every day, defendants still deducted the meal allowance from his paychecks in 2016.

159.    Plaintiff Maneiro was never notified by Defendants that his tips were being included as an offset for wages.

160.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Maneiro's wages.

161.    In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Maneiro (and his fellow tipped employees ), and used these tips to pay the porter's weekly salary;  similarly, defendants withheld a portion of  the credit card tips customers wrote in for Plaintiff Maneiro to pay the coat room attendant's weekly  salary.

162.    Although Plaintiff Maneiro was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Maneiro was not compensated for all of the hours that he worked.

163.    Furthermore, Defendants did not provide Plaintiff Maneiro with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

164.    In addition, Plaintiff Maneiro's wage statements did not indicate the correct amount of hours that he worked.

165.    Defendants did not give any notice to Plaintiff Maneiro, in English and in Spanish (Plaintiff Maneiro's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

- 24 -

166.    Defendants required Plaintiff Maneiro to purchase "tools of the trade" with his own funds—including four black dress pants, six white dress shirts and two pairs of black dress shoes.

*Plaintiff Wilian Argudo*

167.    Plaintiff Argudo was employed by Defendants from approximately 2007 until on or about July 2016.

168.    Defendants ostensibly employed Plaintiff Argudo as a waiter and bartender.

169.    However, Plaintiff Argudo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

170.    Although Plaintiff Argudo was ostensibly employed as a waiter and bartender, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

171.    Plaintiff Argudo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

172.    Plaintiff Argudo's work duties required neither discretion nor independent judgment.

173.    Plaintiff Argudo regularly worked in excess of 40 hours per week.

174.    From approximately April 2011 until on or about July 2016, Plaintiff Argudo worked from approximately 10:00 a.m. until on or about 11:30 p.m. or 12:30 a.m. three days a week and from approximately 10:00 a.m. until on or about 3:30 p.m. and from approximately 4:30 p.m. until on or about 11:30 p.m. or 12:30 a.m. three days a week (typically 81 hours per week).

175.    Throughout his employment with Defendants, Plaintiff Argudo was paid his wages by check.

176.    From approximately April 2011 until on or about December 2015, Defendants paid Plaintiff Argudo $5.00 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours. For example, during the week of September 27, 2015, defendants paid Plaintiff Argudo $9.40 per hour for some of his overtime hours.

177.    From approximately January 2016 until on or about July 2016, Defendants paid Plaintiff Argudo $7.50 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours. For example, during the week of March 20, 2016, defendants paid Plaintiff Argudo $11.25 per hour for some of his overtime hours.

178.    Although Plaintiff Argudo almost never ate the pasta with tomato sauce that defendants gave him and his fellow workers every day, defendants still deducted the meal allowance from his paychecks in 2016.

179.    Plaintiff Argudo was never notified by Defendants that his tips were being included as an offset for wages.

180.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Argudo's wages.

181.    In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Argudo (and his fellow tipped employees), and used these tips to pay the porter's weekly salary;  similarly, defendants withheld a portion of the credit card tips customers wrote in for Plaintiff Argudo to pay the coat room attendant's weekly  salary.

- 26 -

182.    Although Plaintiff Argudo was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Argudo was not compensated for all of the hours that he worked.

183.    In addition, Plaintiff Argudo's wage statements did not indicate the correct amount of hours that he worked.

184.    Furthermore, Defendants did not provide Plaintiff Argudo with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

185.    Defendants did not give any notice to Plaintiff Argudo, in English and in Spanish (Plaintiff Argudo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

186.    Defendants required Plaintiff Argudo to purchase "tools of the trade" with his own funds—including twelve black dress pants per year, four pairs of black shoes per year  and twelve white dress shirts per year.

*Plaintiff Freddy Vazquez*

187.    Plaintiff Freddy was employed by Defendants from approximately September 2015 until on or about November 2016.

188.    Defendants ostensibly employed Plaintiff Freddy as a busboy.

189.    However, Plaintiff Freddy was also required to spend a significant portion of his work day performing the non-tipped duties described above.

190.    Although Plaintiff Freddy was ostensibly employed as a busboy, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

191.    Plaintiff Freddy regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

192.    Plaintiff Freddy's work duties required neither discretion nor independent judgment.

193.    Plaintiff Freddy regularly worked in excess of 40 hours per week.

194.    From approximately September 2015 until on or about November 2016, Plaintiff Freddy worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 12:00 a.m. or 12:30 a.m. Mondays through Fridays and from approximately 5:00 p.m. until on or about 11:00 p.m. on Saturdays (typically 67.25 hours per week).

195.    Throughout his employment with Defendants, Plaintiff Freddy was paid his wages by check.

196.    From approximately September 2015 until on or about December 2015, Defendants paid Plaintiff Freddy $5.00 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours. For example, during the week of November 8, 2015 defendants paid Plaintiff Freddy $9.40 per hour for some of his overtime hours.

197.    From approximately January 2016 until on or about November 2016, Defendants paid Plaintiff Freddy $7.50 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours.  For example, during the week of February 7, 2016, defendants paid Plaintiff Freddy $11.25 per hour for some of his overtime hours.

198.    Although Plaintiff Freddy only ate the pasta with tomato sauce that defendants gave him and his fellow workers every day for lunch twice a week, defendants still deducted the meal allowance from his paycheck in 2016.

199.    Plaintiff Freddy was never notified by Defendants that his tips were being included as an offset for wages.

200.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Freddy's wages.

201.    In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Freddy (and his fellow tipped employees),  and used these tips to pay the porter's weekly salary;  similarly, defendants withheld a portion of  the credit card tips customers wrote in for Plaintiff Freddy to pay the coat room attendant's weekly salary.

202.    Although Plaintiff Freddy was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Freddy was not compensated for all of the hours that he worked.

203.    Furthermore, Defendants did not provide Plaintiff Freddy with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

204.    In addition, Plaintiff Freddy's wage statements did not indicate the correct amount of hours that he worked.

205.    Defendants did not give any notice to Plaintiff Freddy, in English and in Spanish (Plaintiff Freddy's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

206.    Defendants required Plaintiff Freddy to purchase "tools of the trade" with his own funds—including shoes and pants.

*Plaintiff Sergio Llanos*

207.     Plaintiff Llanos was employed by Defendants from approximately 2007 until on or about October 2015.

208.    Defendants ostensibly employed Plaintiff Llanos as a waiter.

209.    However, Plaintiff Llanos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

210.    Although Plaintiff Llanos was ostensibly employed as a waiter, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

211.    Plaintiff Llanos's regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

212.    Plaintiff Llanos's work duties required neither discretion nor independent judgment.

213.    Plaintiff Llanos regularly worked in excess of 40 hours per week.

214.    From approximately April 2011 until on or about October 2015, Plaintiff Llanos worked from approximately 10:00 a.m. until on about 3:30 p.m. and from approximately 5:00 p.m. until on or about 11:30 pm Mondays through Fridays, and from approximately 5:00 p.m. until on or about 11:30 pm on Saturdays (typically 66.5 hours per week).

215.    Throughout his employment with Defendants, Plaintiff Llanos was paid his wages by check.

216.    From approximately April 2011 until on or about October 2015, Defendants paid Plaintiff Llanos $5.00 per hour for his regular hours and varying rates (that were rarely at the lawful overtime rate) for some of his overtime hours. For example, during the week of June 12, 2011, defendants paid Plaintiff Llanos $8.65 per hour for some of his overtime hours.

217.    Plaintiff Llanos was never notified by Defendants that his tips were being included as an offset for wages.

218.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Llanos's wages.

219.    In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Llanos (and his fellow tipped employees ), and used these tips to pay the porter's weekly salary; similarly, defendants withheld a portion of the credit card tips customers wrote in for Plaintiff Llanos to pay the coat room attendant's weekly salary.

220.    Although, Plaintiff Llanos was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Llanos was not compensated for all of the hours that he worked.

221.    Furthermore, Defendants did not provide Plaintiff Llanos with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

222.    In addition, Plaintiff Llanos's wage statements did not indicate the correct amount of hours that he worked.

223.    Defendants did not give any notice to Plaintiff Llanos, in English and in Spanish (Plaintiff Llanos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

224.    Defendants required Plaintiff Llanos to purchase "tools of the trade" with his own funds—including five black pairs of pants per year, three pairs of shoes per year, and fifteen white dress shirts per year.

*Plaintiff Charles Aliaga*

225.    Plaintiff Aliaga was employed by Defendants from approximately 2009 until on or about September 2012.

226.    Defendants ostensibly employed Plaintiff Aliaga as a waiter.

- 31 -

227.    However, Plaintiff Aliaga was also required to spend a significant portion of his work day performing the non-tipped duties described above.

228.    Although Plaintiff Aliaga was ostensibly employed as a waiter, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

229.    Plaintiff Aliaga regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

230.    Plaintiff Aliaga's work duties required neither discretion nor independent judgment.

231.    Plaintiff Aliaga regularly worked in excess of 40 hours per week.

232.    From approximately April 2011 until on or about September 2012, Plaintiff Aliaga worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 4:30 pm until on or about 10:00 p.m. or 11:00 p.m. five days per week (typically 55 hours per week).

233.    Throughout his employment with Defendants, Plaintiff Aliaga was paid his wages by check.

234.    From approximately April 2011 until on or about September 2012, Defendants paid Plaintiff Aliaga $5.00 per hour for his regular hours and usually $8.65 per hour for some of his overtime hours. For example, during the week of May 13, 2012, defendants paid Plaintiff Aliaga $8.65 per hour for some of his overtime hours.

235.    Plaintiff Aliaga was never notified by Defendants that his tips were being included as an offset for wages.

236.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Aliaga's wages.

237.    In addition, defendants illegally withheld all of the cash tips customers paid Plaintiff Aliaga (and his fellow tipped employees ), and used these tips to pay the porter's weekly salary.

238.    Although, Plaintiff Aliaga was required to keep track of his time, defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Aliaga was not compensated for all of the hours that he worked.

239.    Furthermore, Defendants did not provide Plaintiff Aliaga with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

240.    In addition, Plaintiff Aliaga's wage statements did not indicate the correct amount of hours that he worked.

241.    Defendants did not give any notice to Plaintiff Aliaga, in English and in Spanish (Plaintiff Aliaga's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

242.    Defendants required Plaintiff Aliaga to purchase "tools of the trade" with his own funds—including shoes, twenty shirts, four pairs of pants, and forty pairs of socks.

*Defendants' General Employment Practices*

243.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

244.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law *inter alia*, by not paying them the wages they were owed for the hours they worked.

- 33 -

245.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

246.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving plaintiffs of a portion of the tips earned during the course of employment.

247.    Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

248.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

249.    At no time did Defendants inform Plaintiffs that they reduce their hourly wage by a tip allowance.

250.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

251.    Defendants required Plaintiffs to perform general non-tipped Italian restaurant tasks in addition to their primary duties as busboys, food runners, waiters and bartenders.

252.    Plaintiffs were employed ostensibly as tipped employees by Defendants, although they spent several hours per day performing non-tipped duties.

253.    These Plaintiffs were paid at the lowered tip-credited rate by Defendants. However, under state law, Defendants were not entitled to a tip credit because Plaintiffs' non-

tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less). 12 N.Y.

C.R.R. § 146-2.9.

254.    Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not

take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

255.    Plaintiffs' duties were not incidental to their occupation as busboys, food runners,

waiters, and bartenders, but instead constituted entirely unrelated general Italian restaurant work

with duties including the non-tipped duties described above.

256.    In violation of federal and state law, as discussed above, Defendants classified

Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have

classified them as non-tipped employees and paid them at the minimum wage rate.

257.    Defendants failed to inform Plaintiffs who received tips that Defendants intended

to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL

before any deduction may be taken.

258.    Defendants failed to inform Plaintiffs that their tips would be credited towards the

payment of the minimum wage.

259.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries

they made to customers.

260.    Defendants willfully disregarded and purposefully evaded recordkeeping

requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain

accurate and complete timesheets and payroll records.

261.    Upon information and belief, these practices by Defendants were done willfully to

disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to

avoid paying Plaintiffs properly for their full hours worked.

262.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

263.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former tipped employees.

264.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

265.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## **FLSA COLLECTIVE ACTION CLAIMS**

266.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA class Period").

267.    At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime, and spread of hours pay, and willfully failing to keep records required by the FLSA.

268.    At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 Class who are and/or were similarly situated, were subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the minimum wage and overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

269.    At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime, and spread of hours pay, and willfully failing to keep records required by the FLSA.

270.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

271.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

272.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

273.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

274.    There are questions of law and fact common to the Class including:

a.    What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b.    What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c.    What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d.    Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

- 38 -

e.   Whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f.   Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g.   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h.   What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

275.   The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

276.   The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

277.   The common questions of law and fact predominate over questions affecting only individual members.

278.   A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against

corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

279.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

280.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

281.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

282.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

283.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

284.    In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members), at the applicable minimum hourly rate.

285.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

286.     Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

287.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

288.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

289.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

290.     Plaintiffs (and the putative FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

291.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

292.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members) controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

293.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage.

294.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

295.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF THE OVERTIME PROVISIONS OF THE**
**NEW YORK STATE LABOR LAW)**

296.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

297.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

298.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

299.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR)**

300.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

301.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day

Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-1.6.

302.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

303.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

304.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

305.    Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 class members) with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

306.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

- 43 -

307.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

308.    With each payment of wages, Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 class members) with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

309.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**EIGHTH CAUSE OF ACTION**
**(VIOLATION OF THE TIP WITHHOLDING PROVISIONS**
**OF THE NEW YORK LABOR LAW)**

310.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

311.    Defendants unlawfully and without permission from Plaintiffs (and the FLSA and Rule 23 class members) misappropriated and withheld gratuities paid by customers which should have been retained by Plaintiffs (and the FLSA and Rule 23 class members).

312.    Defendants' action violates NYLL §196-d.

313.    Defendants are liable to Plaintiffs (and the FLSA and Rule 23 class members) in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(RECOVERY OF EQUIPMENT COSTS)**

314.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

- 44 -

315.    Defendants required Plaintiffs (and the FLSA and Rule 23 class members) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as work uniforms, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

316.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and

Rule 23 class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA are willful as to Plaintiffs and the FLSA and Rule 23 class members;

(f)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 class members;

(i)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 class members;

(j)    Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the FLSA and Rule 23 class members;

(k)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA and Rule 23 class members' compensation, hours, wages and any deductions or credits taken against wages;

(l)    Declaring that Defendants violated the tip withholding provisions of the New York Labor Law;

(m)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order are willful as to Plaintiffs and the FLSA and Rule 23 class members;

(n)     Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages and improper withholding of gratuities, as well as awarding spread of hours pay under the NYLL, as applicable;

(o)     Awarding Plaintiffs and the FLSA and Rule 23 class members damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
April 28, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    __/s/ Michael Faillace_____
Michael A. Faillace
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540                                    Telephone: (212) 317-1200
New York, New York 10165                                    Facsimile: (212) 317-1620
————

Faillace@employmentcompliance.com

March 13, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                              Jose F Carchi

                                                      Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

                                                      _Jose F Carchi_

Signature / Firma:

                                                      13 de marzo de 2017

Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 13, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Marco Vasquez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:          *Marco Vasquez*

Date / Fecha:               13 de marzo de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

March 22, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    <u>Flavio Caisaguano</u>

Legal Representative / Abogado:    <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:

Date / Fecha:                      <u>22 de marzo de 2017</u>

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 20, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **Jesus Castillo Hernandez**

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      _20 de marzo de 2017_

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 23, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Luiz Romero De Jesus

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    23 de marzo de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 27, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Manuel Maneiro

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    27 de marzo de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 22, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Wilian Argudo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     22 de marzo de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 12, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Sergio Llanos

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      12 de abril de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

April 17, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Charles Aliaga

Legal Representative / Abogado:    Michael Faillace & Associates, P.C. _____

Signature / Firma:    _____

Date / Fecha:    _____17 de abril de 2017_____

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 28, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Freddy Vazquez

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      _Freddy Vazquez_

Date / Fecha:                           28 de abril de 2017

*Certified as a minority-owned business in the State of New York*